IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



**CHRISTOPHER TODD LANDECK,**

    Petitioner,

v.                                                  Civil Action No. **3:15CV105**

**I.T. GILMORE,**

    Respondent.

## MEMORANDUM OPINION

Christopher Todd Landeck ("Landeck"), a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his conviction in the Circuit Court of the City of Richmond, Virginia ("Circuit Court"). By Memorandum Opinion and Order entered on January 28, 2016, the Court granted in part and denied without prejudice in part Respondent's Motion to Dismiss.[1] *See Landeck v. Gilmore*, No. 3:15CV105, 2016 WL 356085, at *10 (E.D. Va. Jan. 28, 2016). In his § 2254 Petition, Landeck argues entitlement to relief based upon the following remaining grounds:[2]

    **Claim One:**   Counsel rendered ineffective assistance "pretrial with respect to motion *in limine*." (§ 2254 Pet. 8.)

    **Claim Three:** "Prosecutorial misconduct/plain error . . . at trial with respect to multiple instances of the prosecution's improper rebuttal argument . . . ." (*Id.* at 11.) Specifically, the Commonwealth:
        (a) & (b) engaged in "[i]mpermissible vouching" by "improperly express[ing] his opinion of the veracity of a defense witness" (*id.* at 12–13);

---

[1] The Court dismissed Claims Two, Three (d), Four (d) and Six. *Landeck*, 2016 WL 356085, at *10.

[2] The Court omits the emphases in the quotations from Landeck's submissions. Because several of Landeck's "grounds" encompass allegations of both prosecutorial misconduct and ineffective assistance of counsel with regard to counsel's response to that conduct, in an abundance of caution, the Court previously separated these grounds into Claims Three and Four.

      (c) "unlawfully manipulated the evidence . . . by materially misstating . . . prior testimony" (*id.* at 13); and

Claim Four: Counsel rendered ineffective assistance by his "ineffective failure to challenge or object to multiple plain errors and to adequately challenge the court's insufficient remedial instruction regarding counsel's only objection to the inflammatory language." (*Id.* at 12.) Specifically counsel failed to object to the Commonwealth's:
    (a) & (b) "[i]mpermissible vouching" (*id.* at 12–13);
    (c) "unlawful[] manipulat[ion of] the evidence . . . by materially misstating . . . prior testimony" (*id.* at 13); and

Claim Five: Counsel rendered ineffective assistance on appeal. (*Id.* at 17.)

Respondent has filed supplemental briefing in support of its Motion to Dismiss. (ECF No. 29.) Landeck has responded. ("Resp.," ECF No. 34–1.)[3] For the reasons stated below, the Motion to Dismiss will be GRANTED.

## I. PROCEDURAL HISTORY

Following a jury trial, the Circuit Court convicted Landeck of aggravated malicious wounding and sentenced him to an active term of ten years of incarceration. Landeck appealed, and the Court of Appeals of Virginia affirmed his conviction. *Landeck v. Commonwealth*, 722 S.E.2d 643, 645 (Va. Ct. App. 2012). The Supreme Court of Virginia refused Landeck's subsequent petition for appeal. *Landeck v. Commonwealth*, No. 120612, at 1 (Va. Sept. 13, 2012).

On September 9, 2013, Landeck filed a petition for a writ of habeas corpus in the Circuit Court raising Claims Two, Three (d), and Four (d) of the instant § 2254 Petition. (ECF No. 17–

---

[3] Landeck files various "Objections to the Memorandum Opinion." (Resp. 2.) Landeck's objections lack merit. Landeck contends that the Court erred by "fragment[ing] his ineffective assistance claim into separate grounds of ineffective assistance and prosecutorial misconduct." (*Id.* at 6.) Despite Landeck's desire to bind these claims together, a Sixth Amendment claim of ineffective assistance of counsel and a claim that Landeck's due process rights were violated by prosecutorial misconduct are separate and distinct claims. Nevertheless, as explained in Part II below, Landeck defaulted his claims of prosecutorial misconduct. However, Landeck argues that the ineffective assistance of counsel is the cause for the default of those claims. Thus, in essence, the Court addresses these claims together.

1, at 4–6.) On November 8, 2013, Landeck filed an amended petition adding Claims One, Three (a)–(c), Four (a)–(c), and Five of the instant § 2254 Petition. (ECF No. 17-2, at 5, 7–11.) On May 21, 2014, the Circuit Court denied his petition. (ECF No. 17-3, at 19.) The Circuit Court denied Claims Two, Three (d), and Four (d) of the instant petition because they lacked merit (*see id.* at 13–19), and Claims One, Three (a)–(c), Four (a)–(c), and Five of the instant petition because they were untimely filed under section 8.01–654(A)(2) of the Virginia Code. (*See id.* at 5.) On February 3, 2015, the Supreme Court of Virginia refused his petition for appeal. (ECF No. 17-4, at 1.)[4]

## II.  EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "'is rooted in considerations of federal–state comity,'" and in the Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n.10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have

---

[4] By Memorandum Opinion and Order entered on January 5, 2015, this Court dismissed Landeck's previously filed § 2254 petition because he had not yet exhausted his claims in state court. (*See* ECF No. 17–5.)

3

exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan*, 513 U.S. at 365–66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*,

4

501 U.S. at 735 n.1).[5] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Here, the Circuit Court found that Claims One, Three (a)–(c), Four (a)–(c), and Five of the instant petition were untimely under Section 8.01–654(A)(2) of the Virginia Code. (*See* ECF No. 17-3, at 5.) Virginia's statute of limitations for habeas actions is an adequate and independent procedural rule when so applied. *See George v. Angelone*, 100 F.3d 353, 363–64 (4th Cir. 1996); *Sparrow v. Dir. Dep't of Corr.*, 439 F. Supp. 2d 584, 587–88 (E.D. Va. 2006). Nevertheless, in Claim Six, instead of raising a new claim, Landeck alleges that the fact that he lacked counsel to assist him with his state habeas petition serves as the cause for his default of these claims. The Court explained in its earlier Memorandum Opinion that while it believed that Claims One, Three (a)–(c), Four (a)–(c), and Five are defaulted, in light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the fact that Landeck had no counsel at his "initial-review collateral proceeding" may establish cause for the procedural default of these claims. *Martinez*, 132 S. Ct. at 1320. The Court further indicated that because of *Martinez*, judicial economy dictated that the Court address the merits of Claims One, Three (a)–(c), Four (a)–(c), and Five. *See Daniels v. Hinkle*, No. 3:11CV675, 2012 WL 2792199, at *1 (E.D. Va. July 9, 2012) (citing *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999)). The

---

[5] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

5

Court directed Respondent to file a further response addressing the merits of these remaining claims. Respondent has done so.

With respect to Claims 3(a), (b), and (c), which allege prosecutorial misconduct and not ineffective assistance of counsel, Respondent argues that *Martinez* fails to excuse Landeck's procedural default of these claims. The Court agrees that Landeck defaulted these claims because he did not raise them at trial or on direct appeal. During both of those proceedings, Landeck was represented by counsel. These claims are defaulted because counsel failed to raise the purported prosecutorial misconduct during trial or an appeal, not because of any lack of counsel during the initial collateral review proceeding. Nevertheless, the Court construes Landeck to argue that ineffective assistance of counsel is the cause for the default of these claims. As discussed below in Part III.C.1, counsel was not deficient, and Landeck was not prejudiced by counsel's actions. Accordingly, ineffective assistance of counsel fails to serve as the cause for the default of these claims. Claims 3(a), (b), and (c) will be DISMISSED.

## III. PURPORTED INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### B. Summary of Landeck's Guilt

Because a summary of Landeck's guilt aids in the resolution of Landeck's claims, the Court now turns to the evidence presented at trial. The Court of Appeals of Virginia aptly explained the overwhelming evidence against Landeck as follows:

> [T]he evidence at trial established that A.F.[6] intended to walk to a bus stop on Robinson Street in the City of Richmond at about noon on January 1, 2010. While A.F. was on the way to the bus stop, A.F. testified, he "was approached" on foot by appellants near the corner of Davis Avenue and Cary Street. According to the record in this case, A.F. is five feet four inches tall and 140 pounds, whereas appellants are significantly larger—Christopher Landeck is six feet two inches tall and 240 pounds, and David Landeck is six feet four inches tall and 275 pounds.
> 
> A.F. testified that David Landeck called A.F. "a name," and then they "got to arguing." A.F. continued to walk in the direction of the bus stop, but David Landeck "pulled [a] knife out." A.F. "tried to go around him," but then Christopher Landeck "got right behind me." This initial confrontation ended when David Landeck put away the knife. A.F. walked away from appellants and in the direction of Mule Barn Alley, which connects Davis Avenue and Robinson Street. According to A.F., appellants told him to "go back and smoke some crack. Go sell some drugs. Stuff like that."
> 
> A second confrontation between appellants and A.F. occurred moments later in Mule Barn Alley. Christopher Landeck was driving appellants' vehicle at that time, with David Landeck in the passenger seat. A.F. testified that Christopher Landeck shouted from the vehicle, "There go that no good n* *ger right there." Defense witness D.E., a building contractor, testified that Christopher Landeck shouted, "[Y]ou're still a no good f**king n* *ger." After Christopher Landeck uttered those words, according to A.F., appellants "[j]umped out the truck and came up towards me." A.F. testified that he then picked up a wooden board from D.E.'s materials trailer in the alley "to keep [appellants] away from me." According to A.F.'s trial testimony, Christopher Landeck had also picked up a wooden board. A.F. testified that he "lunged the board at them to keep them away from me" and, in so doing, struck Christopher Landeck with the board. A.F. then began running down the alley, but he stumbled in some

---

[6] We use the initials of the victim and of the witnesses who testified at appellants' trial, rather than their full names, in an attempt to better protect their privacy.

potholes, and David Landeck caught up with him and grabbed him in a "bear hug." A.F. testified that he escaped momentarily, but stumbled again, and Christopher Landeck then hit him with a wooden board.

At trial, A.F. described being overwhelmed and beaten by appellants, testifying:

> [David Landeck] laid on top of me in the street while [Christopher Landeck] was hitting me with the board. I tried to get up and I couldn't get up, because he was so heavy laying on me. And he kept on hitting me. Kept hitting me with the board. Kept hitting me.

A.F. testified that the beating continued even though he "daze[d] out" three or four times. Each time he returned to consciousness, appellants would continue to strike him. A.F. testified that he was beaten in his face, causing him to bleed significantly. A.F. also testified that he was beaten in his left arm and shoulder, causing significant and permanent injury to that arm. A.F. spent two days in the hospital and underwent surgery to insert a plate and pins in his left arm, which still did not "work right" and had not improved at the time of trial.

In addition, Commonwealth's witness K.D., a tenant of a second-story apartment overlooking Mule Barn Alley, testified that she observed the appellants' beating of A.F. occur while he was "in a fetal position, kind of balled up in the street." K.D. called 9-1-1 during the beating, and her contemporaneous description of the beating was received into the trial evidence and played for the jury. At trial, K.D. testified:

> [A.F.] was basically trying to protect his head and his face as they were hitting him with the board, almost like a baseball bat. They were swinging it as hard as they could, and hitting him in the head. And you could hear the board hit his head. And as the board would hit his head, it would splinter into pieces. They were hitting him that hard. Then one would hit with a board and then the other one would kind of reposition his body and kick him in the ribs and punch him . . . .

Referring to a diagram of the area that was shown to the jury, K.D. also testified that appellants "were kind of walking in and out of Mule Barn Alley, right here, as they were coming back towards him, and kicking him, and punching him, and beating him with the board in the head." K.D. testified that she "just knew that they were going to kill him, just the way they were hitting him," adding that she had "never seen anything so graphic or horrifying in my life."

Appellants contended at trial that the evidence was insufficient as a matter of law to support convictions for aggravated malicious wounding because the evidence failed to prove that they acted with malice. Appellants claimed that they were provoked by A.F.'s act of striking Christopher Landeck with the wooden board—and that this provocation by A.F. created a heat of passion within appellants that negated any malice on their part. Thus, appellants asserted that the Commonwealth's evidence established, at most, unlawful wounding—a crime for which malice is not a required element. However, the trial court ruled that the

presence of malice was an issue for the jury to decide, and the jury convicted appellants of aggravated malicious wounding.

*Landeck v. Commonwealth*, 722 S.E.2d 643, 645–46 (Va. Ct. App. 2012) (footnote number altered from original; other alterations in original).

### C. Analysis

#### 1. Claim Four

In Claim Four, Landeck argues that counsel rendered ineffective assistance by "fail[ing] to challenge or object to multiple plain errors" made by the prosecutor in his rebuttal argument during closing. (§ 2254 Pet. 12.) Specifically, Landeck faults counsel for not objecting to the prosecutor "improperly express[ing] his personal opinion with respect to the veracity of [D.E.[7]], a key defense witness" (*id.*), stating that "[t]he Commonwealth doesn't put on liars" (*id.* at 13 (citation omitted)), and "unlawfully manipulating the evidence before the jury by materially misstating key defense witness [D.E]'s prior testimony . . ." (*id.*). Counsel reasonably eschewed objecting to the prosecutor's rebuttal argument.

During trial, Landeck called D.E. to testify in his defense. D.E. testified that he observed A.F, the victim, walking down the alley "grumbling a little bit" and then stating that he did not "have to put up with that sh*t." (Oct. 7, 2010 Tr. 280–81.) D.E. testified that the Landecks drove up, "had some words with" A.F., and then the A.F. "grabbed the board off of my trailer . . . and went right through the window and hit [Christopher Landeck] in the face. Very aggressively." (Oct. 7, 2010 Tr. 281–82.) D.E. testified that the victim then taunted the Landecks. (Oct. 7, 2010 Tr. 283.) D.E. testified that he "continued to load his trailer," because he did not want to get involved, stayed in the alley, and that he "never saw anybody get struck after that, because I basically ignored it." (Oct. 7, 2010 Tr. 293, 295.)

---

[7] Consistent with the state court, the Court employs the initials for both the witnesses and the victim in this Memorandum Opinion.

9

On cross-examination, the prosecutor asked D.E. about inconsistent statements, including that in his 911 call he stated that there were "two white guys beating up a black guy," but that his testimony at trial was that he didn't see the Landecks strike the victim. (Oct. 7, 2010 Tr. 299–300.)

During closing arguments, defense counsel for David Landeck argued the following:

> Here is one of those things that I find a little strange, a little strange and you really need to take a look at it. The Commonwealth knew of [D.E]'s existence early on in this case. They questioned him about their conversations. [D.E.] told you about the conversations. And if you need to wonder what happened in the alley, who is the one witness with no dog in the fight, who is close enough to see everything that happened. [D.E.] Why is the Commonwealth hiding him from you in their case? Why didn't they put him up there early on to say, look, here's what happened? The reason is [D.E.] contradicts everything that [the victim] has to tell you about what happened at that car.

(Oct. 7, 2010 Tr. 363–64.) In the Commonwealth's rebuttal, the prosecutor stated the following in response:

> I have a few points that I want to address and then I'm going to let you go. The issue with [D.E.]. It was brought up, why didn't the Commonwealth put on [D.E.] to tell what happened? Because [D.E.] either couldn't remember or he lied to you. Those are the reasons. The Commonwealth doesn't put on liars. And we don't, because we want the truth to come out. [D.E.] had to sit here and admit that just a few days ago he told me, I didn't come out into the street. I was never in the street. Then he said, oh. There I am in the pictures. I guess I did come out into the street.
> [D.E.] also said and admitted here, I have had some trouble with blacks in the area. No bias. That is what they want you to believe, that [D.E.] is not biased. I have had some trouble with the blacks in the area.

(Oct. 7, 2010 Tr. 391–92.)

In Claim Four (a), Landeck first faults counsel for failing to object to the prosecutor "improperly express[ing] his personal opinion with respect to the veracity of [D.E.]. (§ 2254 Pet. 12.) Similarly in Claim Four (b), Landeck faults counsel for not objecting to the statement that "[t]he Commonwealth doesn't put on liars." (*Id.* at 13 (citation omitted).) As discussed

10

below, Landeck fails to demonstrate either deficiency of counsel or resulting prejudice from counsel's failure to object to the prosecutor's remarks.

It is "improper for a prosecutor to directly express his opinion as to the veracity of a witness." *United States v. Loayza*, 107 F.3d 257, 262 (4th Cir. 1997) (quoting *United States v. Moore*, 11 F.3d 475, 481 (4th Cir. 1993)). "Nonetheless, comments made by a prosecutor during closing arguments will not warrant a new trial unless they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *United States v. Francisco*, 35 F.3d 116, 120 (4th Cir. 1994)). A prosecutor's "statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985). "Where the record justifies the inference that a witness has lied, prosecutors do not cross the line into impermissible argument in calling the witness a 'liar,' provided, of course, that the prosecutor does not suggest that this is a personal opinion or that it is based on extra-record government information." *Moore v. United States*, 934 F. Supp. 724, 730 (E.D. Va. 1996). Moreover, "[i]t is well-settled that, when the defense makes comments in closing that invite the [prosecutor] to respond, the prosecution, in rebuttal, may enter into areas which would otherwise constitute improper argument." *Schmitt v. True*, No. Civ.A. 3:02CV953, 2005 WL 2245235, at *2 (citing *United States v. McNatt*, 931 F.2d 251, 258 (4th Cir. 1991); *United States v. Harrison*, 716 F.2d 1050, 1052–53 (4th Cir. 1983)); *see Young*, 470 U.S. at 11. To assess whether a prosecutor's remarks are improper

> the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo. Thus the import of the evaluation has been that if the prosecutor's remarks were "invited," and did no more than respond substantially in order to "right the scale," such comments would not warrant reversing a conviction.

11

*Young*, 470 U.S. at 12–13.

Here, defense counsel for David Landeck questioned why the Commonwealth had not called D.E. as a witness, and stated that the Commonwealth intentionally "hid[] him from you in their case" because his testimony conflicted with the victim's testimony. (Oct. 7, 2010 Tr. 363–64.) In his response, the prosecutor explained the reasons why the Commonwealth had not called D.E.—because he either could not remember the events or he had not told the truth. (Oct. 7, 2010 Tr. 391.) While the prosecutor's suggestion that D.E. may have lied to the jury may have been improper standing alone, the argument about the veracity of D.E.'s testimony was invited by defense counsel's initial remarks about D.E.'s absence in the Commonwealth's case. The prosecutor's comments were a reasonable response to the defense argument that the Commonwealth intentionally "hid" a key witness. These rebuttal comments "did no more than respond substantially in order to right the scale" when viewed in concert with defense counsel's assertion that the Commonwealth intentionally "hid" evidence from the jury. *Young*, 470 U.S. at 12–13.

Moreover, in the context of a Sixth Amendment ineffective assistance claim, "the question [the Court must] ask is not whether the prosecutor's comments were proper, but whether they were so improper that counsel's only defensible choice was to interrupt those comments with an objection." *Schmitt*, 2005 WL 2245235, at *3 (quoting *Bussard v. Lockhart*, 32 F.3d 322, 324 (8th Cir. 1994)); *see Young*, 470 U.S. at 13. Counsel reasonably eschewed objecting to these comments. Even if the prosecutor's comments were improper, they were brief and isolated, and were not so egregious in light of D.E.'s inconsistent testimony as to warrant an objection. To the contrary, noting an objection would have drawn the jury's attention to the comments. *See Moore*, 934 F. Supp. at 727 (holding that counsel's failure to object to prosecutor

calling witness a liar was "a reasonable trial tactic" and explaining that "all experienced practitioners recognize that not infrequently, it is better to remain silent than to draw attention to a matter by offering an objection").

Landeck also fails to demonstrate any prejudice from counsel's failure to object to the prosecutor's suggestion that D.E. may have lied and to the statement that "the Commonwealth doesn't put on liars." (Oct. 7, 2010 Tr. 391.) Landeck simply fails to demonstrate that there is a reasonable probability that an objection by counsel would have altered the outcome of his trial. Overwhelming evidence existed of Landeck's guilt of aggravated malicious wounding. All of the evidence established that Landeck pursued the victim into the alley and then out onto the street. Both the victim and a witness, K.D., testified that the Landeck brothers brutally beat the victim with boards, kicked him, and punched him while he was lying in the street in the fetal position and was in and out of consciousness. The victim had extensive and permanent injuries. Landeck fails to demonstrate that any objection to the prosecutor's remarks would have altered the outcome of the trial. Because Landeck fails to demonstrate any deficiency of counsel or resulting prejudice, Claims Four (a) and Four (b) will be DISMISSED.

In Claim Four (c), Landeck faults counsel for failing to object to the prosecutor "improperly and unlawfully manipulat[ing] the evidence before the jury by materially misstating key defense witness [D.E.]'s prior testimony in its rebuttal summation." (§ 2254 Pet. 13.) Specifically, Landeck believes that the prosecutor misstated D.E.'s testimony about whether or not D.E. was racially biased. During trial, the following exchange occurred between the prosecutor and D.E.:

    Q    Did you tell me that you had some problems with blacks in the area?

    A    No. I don't recall telling you that.

> Q    You don't remember that?
>
> A    No sir.
>
> MR. MARTIN:  Thank you

(Oct. 7, 2010 Tr. 303.) Landeck interprets this exchange as "[D.E.] den[ying] ever having said that he had 'had some trouble with the blacks in the area.'" (§ 2254 Pet. 14.)

In his rebuttal argument, the prosecutor stated: "[D.E.] also said and admitted here, I have had some trouble with blacks in the area. No bias. That is what they want you to believe, that [D.E.] is not biased. I have had some trouble with the blacks in the area." (Oct. 7, 2010 Tr. 392.) Landeck argues that D.E. "never admitted to saying that he had previously experienced problems with blacks as counsel for the Commonwealth stated in summation" and that "the evidence from the record itself completely refutes the Commonwealth's statement." (§ 2254 Pet. 14.) While Landeck is correct that D.E. never admitted that he had affirmatively told the prosecutor that he "had some problems with blacks in the area," D.E.'s statement can also not be read as Landeck urges here. D.E. did not deny making the statement to the prosecutor. At most, D.E. stated that he could not recall telling the prosecutor whether he had previously experienced problems.

Once again, Landeck fails to demonstrate any deficiency of counsel or resulting prejudice. "The government may attempt to persuade the jury to draw suggested inferences unfavorable to the defense, as long as the prosecutor's *own opinion* . . . is not urged on the jury." *United States v. Smith*, 982 F.2d 681, 683 (1st Cir. 1993) (citing *United States v. Mount*, 896 F.2d 612, 625 (1st Cir. 1990)). The prosecutor's statement did not mislead the jury here. The prosecutor was permitted to try to persuade the jury that D.E. had a pre-existing bias that could possibly provide him with a reason to provide an inaccurate account of what he observed. The

jury heard D.E. testify that he did not recall telling the prosecutor that he "had some problems with the blacks in the area." (Oct. 7, 2010 Tr. 303.) The prosecutor in his closing remarks incorrectly stated that D.E. "admitted *here*, . . . that [he had] some trouble with the blacks in the area." (Oct. 7, 2010 Tr. 392 (emphasis added).) Once again, while the statement was not exactly what D.E. stated during trial, counsel could have reasonably perceived that objecting to this comment would have little to no impact on the outcome of trial or perhaps could have highlighted a potential bias to the jury.

Despite Landeck's characterization of D.E. as a "key defense witness" (§ 2254 Pet. 14), counsel could have reasonably perceived that D.E. had not been a particularly compelling defense witness. Landeck's defense theory was that he acted in self-defense. D.E. testified that after observing the victim hit Landeck with a board, he "continued to load his trailer," because he did not want to get involved, stayed in the alley, and that he "never saw anybody get struck after that, because I basically ignored it." (Oct. 7, 2010 Tr. 293.) After D.E.'s testimony, counsel reasonably could have determined that D.E. failed to bolster significantly the defense theory that the victim was the aggressor. Counsel could have reasonably perceived that while the prosecutor's statement was not entirely accurate, it simply did not warrant an objection in light of D.E.'s inconsistent testimony. Thus, counsel was not deficient for failing to object to the prosecutor's statement.

Moreover, Landeck fails to demonstrate that counsel's lack of objection to the prosecutor's statement resulted in any prejudice to him. As previously explained, overwhelming evidence existed of Landeck's guilt. The evidence established that the hulking Landeck brothers pursued the substantially smaller victim into the alley, the victim picked up a board and struck Landeck, and then both brothers pursued the victim again out to the street where they brutally

15

beat, kicked, and punched the victim. Thus, Landeck fails to demonstrate that but for counsel's failure to object, the outcome of the trial would have been different. Accordingly, Claim Four (c) will be DISMISSED.

### 2. Claim One

In Claim One, Landeck argues that counsel rendered ineffective assistance "pretrial with respect to motion *in limine*." (§ 2254 Pet. 8.) Prior to trial, counsel filed a motion *in limine* "seeking to prevent the Commonwealth 'from making any direct or indirect reference to any racial slurs, epithets or other racially insensitive remarks made by any defendant in this case.'" (*Id.* (citation omitted).) Counsel argued that references to these statements would be prejudicial and could improperly influence the jury. According to Landeck, "[c]ounsel's motion *in limine* was frivolous and a strategic blunder" because the Circuit Court granted the motion and excluded certain racial slurs made by both the victim and defendants, but not another epithet made later by Landeck. (*Id.* at 8–9.) Landeck complains that "[t]he net effect of counsel's improvident and ill-advised motion . . . was to allow in only a single statement which consisted of a vicious racial epithet made by petitioner," which Landeck claims "was actually in response to a racial slur uttered by the victim." (*Id.* at 9.) As discussed below, Landeck fails to demonstrate any deficiency of counsel or resulting prejudice.

Counsel explains the motion *in limine* was filed because they did not want "racism[] to become the focus of the trial instead of the actions of all the participants." (ECF No. 29–2, at 2.) Counsel further notes that "Petitioner was concerned about the racial slurs that were attributed to him during the physical alteration" because Landeck and his brother were both white and the victim was black. (*Id.*) Landeck and his counsel were concerned that the prosecutor "wished to make this a case about racism." (*Id.*) "Petitioner understood and agreed with the filing of the

16

Motion in Limine. Petitioner felt that the prosecutor was attempting to portray him as a racist." (*Id.* at 2–3.)

Contrary to Landeck's contention, counsel's attempt to remove racial slurs from the trial was sound trial strategy. *Strickland*, 466 U.S. at 691 (explaining that "strategic choices made after thorough investigation . . . are virtually unchallengeable"). The Circuit Court's exclusion of some, but not all, of the racially charged statements made by the parties fails to render counsel's performance deficient.

Moreover, as previously explained, in light of the overwhelming evidence of Landeck's guilt of aggravated malicious wounding, he fails to demonstrate any prejudice from counsel's actions. Accordingly, Claim One will be DISMISSED.

## IV. PURPORTED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). A presumption exists that appellate counsel "'decided which issues were most likely to afford relief on appeal.'" *Bell*, 236 F.3d at 164 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id.* (quoting *Smith v. Robbins*,

17

528 U.S. 259, 288 (2000)). As explained below, Landeck fails to demonstrate that appellate counsel rendered ineffective assistance.

In Claim Five, Landeck faults appellate counsel for failing "to identify and raise issues of plain error under the ends of justice exception." (§ 2254 Pet. 17.) Landeck claims that appellate counsel should have raised the alleged prosecutorial misconduct claims contained in Claim Three on appeal. Landeck admits that trial counsel failed to object to these remarks during trial, and these challenges were not preserved for appeal; however, he suggests that "appellate counsel should have addressed the issues under the 'ends of justice' exception in Supreme Court Rule 5:25." (*Id.*)

> On appeal, counsel argued that
>
> the trial court erred when it: (1) admitted evidence of a racial epithet attributed to Christopher Landeck; (2) denied appellants' motion for a mistrial following the prosecution's rebuttal argument to the jury; (3) overruled appellants' objection to the Commonwealth's proposed jury instruction concerning the heat of passion; and (4) denied appellants' motion to set aside the jury's guilty verdicts based on what appellants claim is insufficient evidence to prove malice.

*Landeck v. Commonwealth*, 722 S.E.2d 643, 645 (Va. Ct. App. 2012). Landeck fails to demonstrate that the challenges to the prosecutor's comments about D.E's testimony that he urges here are clearly stronger than the claims appellate counsel advanced on appeal. Additionally, counsel reasonably eschewed raising an appellate challenge to the prosecutor's remarks during the rebuttal argument at the end of trial.

The "ends of justice" exception allows a Virginia appellate court to examine a matter not properly preserved for appeal. *See Brown v. Commonwealth*, 380 S.E.2d 8, 10 (Va. Ct. App. 1989) (citation omitted) (explaining that because errors can usually be corrected in the trial court, "we will notice error for which there has been no timely objection only when necessary to satisfy the ends of justice"). "The ends of justice exception is narrow and is to be used sparingly . . . ."

18

*Id.* at 11. To satisfy that exception, a petitioner must demonstrate that "there was error in the judgment appealed from and application of the ends of justice exception is necessary to avoid grave injustice." *Ali v. Commonwealth*, 701 S.E.2d 64, 68 (Va. 2010) (citing *Charles v. Commonwealth*, 613 S.E.2d 432, 435 (Va. 2005); *Redman v. Commonwealth*, 487 S.E.2d 269 272-73 (1997)); *see Redman*, 487 S.E.2d at 271 (explaining that "[i]n order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred" and that "the trial error must be clear, substantial and material"). Appellate counsel reasonably perceived that this was not the "rare case" where the ends of justice exception should be invoked. *Jiminez v. Commonwealth*, 402 S.E.2d 678, 680 (Va. 1991). Any argument that the ends of justice required appellate review of Landeck's claims of prosecutorial misconduct clearly was not the strongest issue to challenge on appeal. As previously explained, to the extent the prosecutor's comments were even improper, an objection to these remarks would not have resulted in Landeck's acquittal. Appellate counsel wisely eschewed advancing the unpreserved claims of prosecutorial misconduct in Claim Three, and instead, raised four claims on appeal that were preserved at trial and were most likely to be successful. Landeck fails to demonstrate deficiency of appellate counsel or resulting prejudice. Accordingly, Claim Five will be DISMISSED.

## V. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss will be GRANTED. The § 2254 Petition will be DENIED. Landeck's Motion for Appointment of Counsel (ECF No. 37) will be DENIED. Landeck's claims and this action will be DISMISSED. A certificate of appealability will be DENIED.

An appropriate Final Order shall issue.

/s/ *[signature]*
Roderick C. Young
United States Magistrate Judge

Date: October 25, 2016
Richmond, Virginia